Gerald **GELLES**, Plaintiff,

v.

Steven R. **SKROTSKY**, individually and as Trustee; John E. Smircina, individually and as Trustee,

No. 96–1248–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

Nov. 17, 1997.

**1400**

Paul L. Huey, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, Samuel I. Burstyn, Alberto Ordonez, Law Office of Alberto J. Ordonez, Miami, FL, for Plaintiff.

Steven C. Dupre, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, FL, for Defendants.

### ORDER ON DEFENDANTS' MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause is before this Court pursuant to the Defendant's Motion to Dismiss this action for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 (hereafter ERISA)(Docket No. 38), filed April 17, 1997, and Plaintiff's response thereto (Docket No. 43), filed May 2, 1997.

### STANDARD OF REVIEW

Plaintiff's complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of this claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss, the court is required to view the complaint in the light most favorable to the Plaintiff and accept ill allegations as true. *Colodny v. Iverson, Yoakum, Papiano & Hatch,* 838 F.Supp. 572 (M.D.Fla. 1993) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). such a

motion should be granted only where the Plaintiff can prove no set of facts upon which relief could be granted. *National Organization for Women v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 71–73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

### BACKGROUND

This case is brought by Plaintiff, Gerard Gelles, against Defendant trustees, Steven Skrotsky and John Smircina (hereafter Defendants), for allegedly breaching their fiduciary duties as required under ERISA. Plaintiff alleges the following facts in his complaint:

1. TDA Industries Inc. (hereafter TDA) is a privately held New York corporation which controls two (2) pension and profit sharing plans which are held by the Pemberton Services Corp. Profit Sharing Trust and the Pemberton Services Corp. Profit Sharing Trust II (hereafter the Plans).

2. Plaintiff presently owns 226,378, or thirty-one percent (31%), of TDA's issued and outstanding stock. He previously held various positions with TDA for close to twenty years including vice president, director, and a member of the Executive Committee of the Board of Directors. Plaintiff is currently a participant and beneficiary of both Plans.

4. Defendants are both officers and directors of TDA and are also designated as trustees and administrators of the Plans.

5. Douglas Fields and Frederick Friedman (hereafter the Management Group) collectively own 503,552, or sixty-nine percent (69%), of TDA's issued and outstanding stock and hold various high level management positions including president and executive vice president respectively.

6. In June of 1990, the Management Group engaged in conduct that effectively excluded Plaintiff from participating in policy decisions of TDA,

substantially increased their salaries, removed Plaintiff as a director and member of the Executive Committee, and refused to renew Plaintiff's employment agreement.

7. Plaintiff then pursued two (2) lawsuits against the Management Group in an effort to protect his investment.

8. On April 10, 1991, the Management Group obtained a valuation of TDA stock from an appraiser of $12.35 per share.

9. On June 19, 1991, a cash offer equivalent of $20.00 per share was rejected by Defendants upon instruction from the Management Group.

10. In June of 1993, the Management Group in concert with the Defendants amended the terms of the Plans without notifying Plaintiff. The amendments effectively eliminated the right of the Plan beneficiaries to vote their TDA shares.

11. The Management Group filed a misleading Form 5300 with the IRS in an effort to effectuate the amendments. Defendants failed to object to this activity.

12. TDA stock was most recently valued by the Management Group on June 30, 1995, at $8.02 per share. The Defendants have never obtained their own independent valuation of TDA stock.

13. During this period, Defendants approved excessive compensation for the Management Group. At one point, Defendants received combined compensation of nearly seven million dollars.

Plaintiff filed his initial complaint on June 24, 1996, seeking removal of Defendants as trustees of the Plans, attorney's fees, costs, and further relief the Court deems appropriate on Count I for breach of their fiduciary duties under ERISA. Further, Count II against Defendants for breach of fiduciary duties in violation of ERISA seeks recovery of compensatory damages, attorney's fees, costs, and relief the Court deems appropriate. Finally, Count III against Defendants for breach of their ERISA fiduciary duties seeks equitable relief and injunctive relief, attorney's fees, costs, and relief the Court deems appropriate.

Defendants seek to have this Court dismiss all three (3) counts of the ERISA claim with prejudice and costs assessed against Plaintiff. Also, Defendants request that this Court reserve jurisdiction to entertain a motion for attorney's fees and grant further relief deemed appropriate.

## DISCUSSION

Taken as a whole, all three (3) counts of Plaintiff's complaint contend that Defendants breached their fiduciary duties owed to Plaintiff under ERISA by engaging in various wrongful acts in their capacity as trustees and administrators of the Plans. Defendants move to dismiss the fiduciary breach claims against them by arguing that they engaged in these alleged wrongdoings in their capacity as officers and directors of TDA and not in their capacities as fiduciaries to the Plans. Under Section 3(21)(A) of ERISA, one is a fiduciary to the extent that:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or there compensation, direct or indirect, with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. Section 1002(21)(A).

█ This definition does not make a person, who is a fiduciary for one purpose, a fiduciary for every purpose. *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184 (7th Cir. 1994). A person "is a fiduciary to the extent that" he performs one of the described duties; people may be fiduciaries when they do certain things but be entitled to act in their own interest when they do others. *John Hancock Mutual Life Insurance Co. v. Harris Trust & Savings Bank*, 510 U.S. 86, 93–99, 114 S.Ct. 517, 523–25, 126 L.Ed.2d 524 (1993).

■ ERISA, Title 29 U.S.C. Section 1108(c), states that, "nothing in . . . this title title shall be construed to prohibit any fiduciary from serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." ERISA clearly recognizes such a situation where an officer of a corporation wears two hats. *Amato v. Western Union International, Inc.,* 773 F.2d 1402, 1416–17 (2nd Cir. 1985). When acting in the capacity of an employee of the corporation, the officer owes a duty to act on behalf of the corporation. *Id.* On the other hand, when the officer is acting in the capacity as fiduciary of the plan, the officer owes duty to act in the best interest of the plan's beneficiaries. *Id.* Individuals operate in their fiduciary capacity "only when and to the extent" that they function as plan administrators, not when they partake in general business activities unregulated by ERISA. See *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 (3rd Cir. 1990).

I. *Defendants' involvement in the 1993 amendment to the Plans was not performed in their fiduciary capacities and therefore they cannot be held responsible for breach of these duties under ERISA.*

Plaintiff's primary contention in his complaint is that Defendants breached their fiduciary duties owed to plan participants under ERISA when they failed to disclose to Plaintiff the Management Group's intention to amend the Plans. Plaintiff maintains that this was done in an effort to harm him because Defendants knew that this amendment would in effect eliminate many of his rights in TDA stock, including his right to vote.

■ Defendants respond in their Motion to Dismiss by arguing first that this specific amendment issue has already been litigated by Plaintiff in New York state court and is thus barred from consideration in this case under the doctrine of collateral estoppel. Alternatively, Defendants contend that even if the amendment issue is not precluded by collateral estoppel, their involvement in amending the Plans occurred in their capacities as officers and directors and thus could

not have breached ERISA fiduciary law. If this Court finds that collateral estoppel bars relitigation of this issue, Defendants' alternate argument becomes moot.

■ Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings, if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, (1980). The doctrine of collateral estoppel can be successfully invoked even where the claims in the two cases differ. *Hann v. Carson,* 462 F.Supp. 854, 863–64 (M.D.Fla.1978). Under Florida law, the following four elements must be established for a defendant to successfully assert the collateral estoppel defense:

(1) the issue at stake must be identical to the one decided in the prior litigation;

(2) the issue must have been actually litigated in the prior proceeding;

(3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and

(4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*St. Laurent II v. Ambrose,* 991 F.2d 672, 675–76 (11th Cir.1993); *In re Yanks,* 931 F.2d 42, 43 (11th Cir.1991); *In re Scarfone,* 132 B.R. 470, 472 (Bankr.M.D.Fla.1991).

Applying this analytical framework to the instant case, this Court finds that Plaintiff is not collaterally estopped from relitigating this particular issue concerning Defendants' roles in amending the Plans in 1993, because Defendants fail to satisfy the first prong of Florida's issue preclusion test. The amendment issue to be decided in the instant case is not identical to that decided in the New York state court proceeding. In *In the matter of the Application of Gerald Gelles and Darst Associates Limited Partnership,* Order and Judgment with Notice of Entry at 10, Index No. 93–124880 (N.Y.Sup.Ct. Feb. 27, 1996), the issue concerned the Management Group's right to amend the Plans. The

court there found that the amendments were validly enacted by the Management Group.

In the present case, the precise issue revolves around Defendants' roles as trustees to the Plans. More specifically, Defendants failure to inform Plaintiff about the Management Group's intention to amend the Plans. Since the issue in the state court ruling involved the Management Group's role in amending the Plans and the issue is this case involves Defendants' roles in amending the Plans, the issues are clearly not identical. Therefore, because the issues are not identical, Defendants have failed to satisfy the first prong of Florida's issue preclusion test and cannot invoke collateral estoppel to bar litigation of this issue.

■ Since the Plan amendment issue is not barred by the doctrine of collateral estoppel, Defendants' alternative argument is worthy of discussion. In their Motion to Dismiss, Defendants set out much recent and persuasive case law addressing this precise issue. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust. See *Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184 (7th Cir.1994). Because defined functions do not include plan design, an employer may decide to end an employee benefit plan without being subject to fiduciary review. *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 505 (1995).

Then in *Lockheed Corp. v. Spink,* 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153(1996), the Supreme Court extended this line of reasoning to also include pension plans. The Court in *Lockheed* held, "Given ERISA's definition of fiduciary and the applicability of the duties that attend that status, we think that the rules regarding fiduciary capacity— including the settlor-fiduciary distinction— should apply to pension and welfare plans alike." *Id.*

*Ravenscraft v. Hy–Vee Employee Benefit Plan and Trust,* 85 F.3d 398 (8th Cir.1996), followed the Supreme Court rule set forth in *Schoonejongen* that an employer does not act as an ERISA fiduciary in adopting or amending that type of plan. In *Ravenscraft,* the board of directors of the Hy–Vee corporation voted to amended its plan to deny benefits to participants who underwent a particular medical procedure. *Id.* at 400. The court ruled that the Hy–Vee board of directors retained complete discretion to amend the plan and that its decision to eliminate the benefits was not subject to judicial review. *Id.*

Viewing the facts in a light most favorable to the Plaintiff, Defendants' involvement in amending the Plans cannot be seen as a fiduciary breach under the ERISA statute. Even assuming, as Plaintiff argues in his complaint, that the amendment was enacted in bad faith in an attempt to harm him, a fiduciary breach under ERISA would still not exist. According to the Supreme Court in *Schoonejongen,* an employer is free to modify a plan at any time for any reason. Like *Ravenscraft,* the Defendants' decision to amend the Plans is not subject to judicial review. Also, since the Court in *Lockheed* extended its rule to also cover pension plans, both Plans in the instant case clearly qualify. As a result, this Court agrees with the Defendants that they cannot be held liable for breaching their fiduciary duties under ERISA for any roles they may have played in amending the Plans in 1993.

II. *Any involvement by Defendants in the filing of Form 5300 can also not be subject to ERISA fiduciary review.*

■ Plaintiff's next contention in his complaint is that Defendants breached their fiduciary duties under ERISA by failing to object to misleading statements made by the Management Group on a Form 5300 that was submitted to the IRS. Defendants rebut by maintaining this activity cannot be classified under Section 406 of ERISA as a prohibited transaction. In addition, Defendants once again assert that under the "two hat theory" the filing of a Form 5300 is an employer function, not a plan fiduciary function.

Plaintiff himself states in his complaint that TDA was required to file a Form 5300 with the IRS as a prerequisite to enacting the amendments to the Plans. Since at least

one function of filing the Form 5300 was to effectuate the amendments, the act of filing was clearly part of the amending process. As a part of the Plan amendment process, following the Supreme Court's ruling set out above, Defendants are exempt from any fiduciary review regarding any alleged involvement in this activity. To be clear, this Court is in no way condoning any possible fraudulent involvement on the part of Defendants. However, at the same time, even assuming that Defendants did partake in this activity, they simply cannot be held accountable on the grounds of breaching their fiduciary duties imposed by ERISA.

III. *While Defendants may have acted in their capacities as fiduciaries when they allegedly accepted Plan asset values from the Management Group, they did not breach their duties under ERISA by doing so.*

■ Plaintiff argues that Defendants' reliance on the TDA stock values provided by the Management Group also constitutes a fiduciary beach under ERISA. Plaintiff contends that Defendants, as trustees, had a duty to obtain their own independent asset evaluations every year. Defendants respond by claiming that their acceptance of these appraisals did not involve plan assets. Furthermore, they maintain that the allegation of the 1991 rejection of the cash offer is barred by ERISA's statute of limitations.

This Court disagrees with Defendants that their roles in accepting the Management Group's valuation formulas and appraisals did not involve Plan assets. As such, the question then centers around whether Defendants were acting in their capacities as ERISA fiduciaries when they accepted the Management Group's appraisals. Looking again to ERISA's functional definition of a fiduciary under Section 3, Defendants would be considered fiduciaries "to the extent they exercised any discretionary authority or discretionary control respecting management of the plan or to the extent he has any discretionary responsibility in the administration of such plan". It appears that, to whatever extent Defendants were involved or not involved with the valuation of the Plans assets, they had some discretion in administering the Plans. Consequently, Defendants were performing as ERISA fiduciaries even by just accepting Plan asset values provided by the Management Group.

However, simply because an individual acted in his or her fiduciary capacity does not mean he or she was in breach of that duty. Section 404 of ERISA sets out the fiduciary duties a named fiduciary owes to the beneficiaries of the plan. The relevant portion of Section 404(a)(1) sets out a prudent person standard that requires:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

In *Davidson v. Cook*, 567 F.Supp. 225, 237–38 (E.D.Va.1983), the court ruled that although the trustees had not been as diligent or as imaginative in dealing with particular loans as they could have been, they were not so lax in their (fiduciary) duties as to violate ERISA's prudence standard. In the instant case, this Court likewise finds that Defendants were not so lax in performing this fiduciary function as to constitute a violation of ERISA's prudence standard.

ERISA does not require that "all plan fiduciaries ... be experts in all phases of plan administration". *Donovan v. Tricario*, 5 EB Cases 205 (S.D.Fla.1984). Defendants merely accepted as true stock valuations provided to them by the Management Group. They cannot possibly be required to be experts on all of the various valuation methods available to appraise plan assets. Defendants looked to the Management Group for this information and as a prudent people in like capacities, accepted the data as accurate and reliable. In addition, Plaintiff's neglects to provide in his complaint any substantive reasons why this Court should hold Defendants to this heightened duty to investigate. This Court, taking the facts in the light most favorable to the Plaintiff, cannot find the complaint adequately alleges that Defendants were in breach of their fiduciary duties under ERISA for failing to obtain alternative stock

valuation techniques when they had no bona-fide reason to doubt the ones provided to them by the Management Group.

■ However, even if the complaint was adequate on that issue, this Court agrees with Defendants' assertion that this alleged rejection of the cash offer in 1993 is precluded by ERISA's statute of limitations provision. The relevant portion of Section 413 provides that:

> No action may be commenced under this Title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of-(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

Plaintiff fails to specify exactly when he became cognizant of the rejection in either his complaint or in his response to Defendants' motion. In fact, Plaintiff neglects to even address Defendants' statute of limitations argument in his Response to Defendants' Motion to Dismiss. Based on Plaintiff's alleged facts in his complaint and his failure to even rebut Defendants' contention in his response, this Court must assume that Plaintiff did have actual knowledge of the cash offer being rejected sometime in 1991. As a result, since this action was commenced in 1996, this occurrence has become time barred from fiduciary review by ERISA's three year statute of limitations.

IV. *Defendants' approval of compensation for the Management Group did not constitute a breach of fiduciary duty under ERISA because the decisions were made in their TDA corporate capacities.*

■ Plaintiff next alleges that by approving excessive compensation for the Management Group, the Defendants, as trustees of the Plans, breached their fiduciary duties under ERISA. In response, in their Motion to Dismiss, Defendants again argue that excessive or not, the compensation decisions were purely business decisions undertaken in their capacity as officers of the company.

Defendants cite to *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.,* 828 F.2d 710 (11th Cir.1987),

where the court found that the president of a closely held corporation did not violate his fiduciary duties under ERISA by electing to pay employee salaries before paying insurance premiums to maintain its plan. The court reasoned that the president's decision to pay employee salaries and other business expenses was a business decision made in his capacity as president of the corporation and not in his capacity as fiduciary of the plan.

Similarly, in the instant case, by returning TDA to private ownership in 1992, TDA is now properly characterized as a closely held corporation. Like *Powhatan,* Defendants acted both as fiduciaries to the Plan, and in some capacity as management of the company. Here, Defendants were both officers and directors of TDA.

The present case however, can be distinguished from *Powhatan* in the respect of who ultimately bore the decision making authority. In *Powhatan,* the president actually made the decision to compensate the employees before maintaining the plan and the court still found no fiduciary breach. The Defendants here were actually once removed from the decision making process. In other words, Defendants here merely had the authority to approve the compensation proposed by the Management Group and did not have free reign to make this decision independently. Consequently, this Court finds that these decisions by the Defendants to pay the Management Group, were business decisions made in their capacity as officers of TDA. In regard to the allegation of excessive compensation, the Defendants are brought out of the ERISA purview since they were not serving in their fiduciary capacities.

V. *The other miscellaneous functions Defendants allegedly failed to perform were also not part of their fiduciary responsibilities under ERISA.*

■ Plaintiff finally asserts that Defendants breached their fiduciary duties under ERISA by among other things, failing to exercise their rights to call shareholder meetings, failing to attend the meetings that took place, and failing to notify Gelles of action to be taken at the shareholder meetings. Defendants only answer to these alle-

gations is that their their obligation to call a shareholder meeting cannot be ripe for adjudication because Plaintiff himself never called for such a meeting.

This Court finds that ERISA fiduciary law does not govern whatever extent Defendants were obligated to perform these various tasks. Once again, these shareholder responsibilities were functions to be performed in their corporate capacity and not in their fiduciary capacity as Plan trustees.

On the facts alleged in Plaintiff's complaint, even accepting them as true, it does appear beyond a doubt that he can prove no set of facts in support of this claim that would entitle him relief. Therefore, this Court will grant Defendants' Motion to Dismiss on these grounds. Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss (Docket No. 38) be **GRANTED** with respect to all three (3) counts; the Clerk of Court be **directed** to enter judgment for the Defendants; and the Court **reserves** jurisdiction to consider Defendants' motion for attorney's fees which must be filed within ten (10) days of this date.